## COUNTY OF ESSEX,

### AT THE

### AUGUST TERM, 1861.

PRESENT:

Hon. ASA O. ALDIS,
Hon. JOHN PIERPOINT,
Hon. LOYAL C. KELLOGG,  } ASSISTANT JUDGES.
Hon. ASAHEL PECK,

---

WILLIAM HOPKINS *v.* JEDEDIAH K. HAYWARD.

*Audita Querela. Levy of Execution.*

*Audita Querela* is an appropriate remedy to vacate and set aside the levy of an execution on real estate, when, through the fraud of the creditor, the officer has made a false return of the appraisal, and has consequently set off too much of the debtor's property, on the basis of the actual appraisal, to sat-

iŝfy the execution or the amount which he returns as satisfied, when this irregularity does not appear upon the face of the officer's return.

Such a defect in a levy is not cured by the omission of both parties to bring a petition to the Supreme Court to vacate the levy, in accordance with sec. 49, chap. 46, p. 316 of the Complied Statutes.

AUDITA QUERELA. The declaration is sufficiently set forth in the opinion of the court. The defendant demurred to the declaration, and the county court at the September term, 1860, ALDIS, J., presiding, adjudged the declaration insufficient, to which the plaintiff excepted.

*Geo. N. Dale* and *Benton & Ray*, for the plaintiff.

*Burns & Fletcher* and *Wm. Heywood*, for the defendant.

PECK, J. This is an *audita querela* to vacate and set aside a levy of an execution in favor of the defendant, Hayward, against the plaintiff, Hopkins, levied on the real estate of the said Hopkins. The question is as to the sufficiency of the declaration; the county court having decided on general demurrer, that the declaration was insufficient.

The declaration alleges that Hopkins owned an undivided half of the premises, which undivided half the appraisers on the execution appraised at $1875, and that the officer set off one undivided third of such undivided half, subject to a mortgage on this undivided half on which was then due $521,32, at the sum of $451,23, in part satisfaction of the execution, alleging that this appears by the officer's return. For aught that appears from the declaration the levy upon the face of it was good. But one grievance complained of is, that after the premises were attached on the original writ in that suit, and before the levy of the execution, a house was built on the premises of the value of $2000, and which was on the premises at the time of the levy, and that the appraisers by direction of the execution creditor, did not appraise the house, or take it into consideration, but appraised the land only in their appraisal, and that by direction of the creditor they did not appraise a homestead in the premises, but deducted $500 from the value of the land for a homestead for the execution debtor. The declaration further alleges that the

defendant knowing the facts, fraudulently procured the officer to return falsely, that the appraisers appraised the said whole undivided half of the premises at $1875, when he knew that they appraised it without the house thereon at $2375, and deducted $500 therefrom as above stated for the plaintiff's homestead; and in like manner procured the officer to return falsely that he had levied on the plaintiff's equity of redemption in one undivided half of the whole farm, when he knew that the house and homestead were not included in the appraisal. Had the whole undivided half of the premises been appraised at $1875, as the return of the officer indicates, the levy would be correct, since after deducting the mortgage the one third of it would be $451,-23, the amount levied. It is clear then, that if the facts alleged had appeared on the face of the officer's return, the levy would have been void, as it would then have appeared by the levy that the officer set off too great a proportion of the debtor's interest in the premises to satisfy the $451,23 of the execution. It has been repeatedly decided that if it appears upon the face of the levy that too much of the debtor's property, on the basis of the appraisal, was set off to satisfy the execution or the amount the officer returns as satisfied thereby, the levy is invalid. The facts alleged and relied on to avoid this levy not appearing upon the face of the levy, and being in contradiction of the officer's returns, the levy could not be attached collaterally, but the remedy of the debtor, if any, is by *audita querela* or some other proceeding brought directly to vacate the levy. Such injustice cannot be without remedy, especially when done by the privity and procurement of the creditor.

The question then is whether *audita querela* is the appropriate remedy. It is insisted by the defendant's counsel that as the remedy by *audita querela* is a harsh remedy, it ought not to be extended beyond its legitimate and accustomed use, and that it is not the proper remedy for the grievance complained of in this case. We are not inclined to extend the writ of *audita querela* beyond its appropriate use, especially in a case where there is another remedy equally beneficial to the party aggrieved and less onerous to the other party; but we cannot in a case proper for its application according to settled principles of law, deny it. *Audita*

*querela* is a judicial writ and is sometimes brought to vacate and set aside a judgment irregularly or fraudulently obtained, but its more common use is to prevent a wrongful and illegal use of an execution, or to redress a grievance already done by such wrongful and illegal use of final process.   It is one mode by which the court exercises its power over its own process to prevent its abuse to the injury of the other party.   Upon principle it would seem that it is a remedy adapted to the present case.   It is laid down in the English elementary books that *audita querela* is the appropriate remedy to set aside an irregular extent on land, and it has often been so said by English judges, Roll. Ab. 305; 1 Com. Dig. (Aud. Quer. A.) p. 647.   But we do not deem it necessary to go into an examination of the English decisions on this subject, as we have a decision in point in our own court that we are satisfied is in accordance with the principles applicable to this remedy.   *Hurlbut* v. *Mayo*, 1 D. Chip. 387, is a full authority for sustaining this writ in a case like the present. In that case the levy was good on the face of it, but it was alleged that the appraisers appraised one piece of land, and that the officer returned a different piece of land as appraised and set off, of greater value than the piece actually appraised.   The court on demurrer to the declaration vacated the levy.   The court then say that they probably would have set aside the levy on motion, but hold that that is no reason why the party should not have his remedy by *audita querela*.   Indeed it would seem that in a case like that and the one before us, where the levy is apparently good on the face of it, and the truth of the officer's return is to be litigated, the remedy should be by *audita querela*, so that the facts may be tried by jury.   In some cases the party aggrieved has his election to seek his remedy by motion or by *audita querela*.   In this case if the court should grant relief on motion the remedy would be equally severe as that afforded by *audita querela*, as the court could not on motion correct the error otherwise than by vacating the levy.   But notwithstanding what is said in *Hurlbut* v. *Mayo*, it is doubtful whether the debtor in this case could have obtained relief by motion, if the facts are in dispute.   Where a party is entitled to relief, the English courts are quite as much in the habit of granting it on motion as our

own ; and the rule there is, that where one has cause of relief which is not matter of fact that need be tried, the court usually helps him on motion, without putting him to his *audita querela* ; but if there is doubt as to the facts, the court will not relieve on motion, but leave the party to his *audita querela.*   1 Com. Dig. 650 ; *Wicket et al* v. *Creamer*, 1 Salk. 264 ; 1 L. Ray. 439 ; *Mitford* v. *Cordwell*, 2 Str. 1198.   Besides, the execution debtor might in cases of this kind, suffer damages which he could not recover by motion.

It is claimed by the defendant's counsel that the plaintiff ought to be restricted to a suit against the officer for a false return. But in a case where the debtor's property has been illegally taken by setting off too great a portion of it to satisfy the execution, he ought not to be driven to that remedy, and to be compelled to take a compensation for his property.   He is entitled to a specific remedy, by which he may have restored to him what has been thus illegally taken.   Even if the creditor had no agency in procuring the false return, it is more reasonable that he should resort to the officer who acted under his employment, than that the debtor should be obliged to seek that remedy.   In this case where the debtor directed the wrongful acts complained of, it certainly is not just to allow him to reap the fruits of his own wrong, and compel the debtor to seek his remedy on the officer who is no more in fault than the creditor, and who is not benefited by the act.   The debtor is clearly entitled to a remedy that will restore to him the estate itself, at least to the extent that it has been wrongfully taken, even if it vacates the whole levy as this remedy necessarily does.   We see no reason to question the authority of *Hurlbut* v. *Mayo*, and that case must govern this.

Nor is this levy cured by the statute of 1837, incorporated into the Comp. Stat. p. 316, on the subject of defective levies, which has not escaped our attention although not referred to in argument.   This statute, which was not in force at the time of the decision of *Hurlbut* v. *Mayo*, gives the supreme court, on petition of either party, power to vacate a levy which may be "irregular, informal or not made according to the strict rules of law, so that the title derived therefrom shall be doubtful," if such petition shall be brought within two years from the time

the extent shall have been returned, and due notice thereof to the adverse party ; and provides that if neither party bring such petition within the two years thus limited, then such extent shall be deemed good and valid.

The two years had not expired in this case when the suit was commenced ; still if that statute applies to this case in all its provisions, it might have been a good answer to this action so far as it seeks to vacate the levy. That statute was intended to apply to formal defects, but not intended to cure by lapse of time a levy like this, defective in substance as to the *subject matter* of the levy, by which gross injustice is done by taking too much of the debtor's land to satisfy the execution. The debtor in such case might have notice of the levy, good on the face of it, and yet be ignorant of the facts which constituted the error until after the expiration of the two years ; and we cannot believe it to have been the intention of the Legislature to deprive the debtor in a case like this of all remedy, if he omitted to bring his petition under that statute in two years after notice of the levy. This is substantially the construction the court adopted in *Bell* v. *Roberts*, 13 Vt. 582, although the court held that the defect in that case was of that formal character that came within the statute.

As to the other question, whether all the appraisers must agree in the appraisal, or whether the majority should govern, we express no opinion.

The judgment of the county court is reversed, and the defendant on motion has leave to replead on the usual terms of paying costs and taking none pending the demurrer, and the cause is remanded to the county court.